United States District Court
District of Massachusetts

|  |  |  |
|---|---|---|
| **MOUNT VERNON FIRE INSURANCE COMPANY,** | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. |
| v. | ) ) | 13-12154-NMG |
| **VISIONAID, INC.,** | ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiff Mount Vernon Fire Insurance Company ("Mount Vernon") seeks a declaratory judgment as to its obligation, if any, to prosecute a counterclaim defendant VisionAid, Inc. ("VisionAid") has asserted against a former employee who sued VisionAid for wrongful termination. VisionAid responded with its own claim for declaratory judgment to establish the scope of Mount Vernon's duty to defend and VisionAid's right to appoint independent counsel.

Pending before the Court are the parties' cross-motions for summary judgment and VisionAid's motion for attorney's fees.

For the reasons that follow, the Court will allow Mount Vernon's motion for summary judgment and deny VisionAid's cross-motion.[1]

I. **Background**

    A. **Underlying Insurance Policy**

VisionAid is a manufacturer of eyewash and lens cleaning products. Mount Vernon provides VisionAid with employment practices liability insurance. Specifically, Mount Vernon issued a liability policy ("the Policy") to H.L. Bouton, Inc., the operating name of VisionAid until shortly after the issuance of the policy that was in effect from May, 2011 through May, 2012.

> The Policy provides, in relevant part, that Mount Vernon
>
> will pay on behalf of [VisionAid], Loss ... for which this coverage applies that [VisionAid] shall become legally obligated to pay because of Claims first made against [VisionAid].

It proceeds to describe Mount Vernon's affirmative obligation to defend VisionAid if any employment practices claim is asserted against it and defines the "Defense Costs" which Mount Vernon must pay as

> reasonable and necessary legal fees and expenses incurred by [Mount Vernon] or by any attorney designated by [Mount Vernon] ... to defend [Visionaid], [that] result[s] from the ... defense ... of a Claim.

---

[1] Because the Court will deny VisionAid's motion for summary judgment, its pending motion for attorney's fees will also be denied.

Finally, the Policy notes that a "Claim" encompasses a proceeding "initiated against" VisionAid in which a party seeks to hold it liable for a purported wrongful act.

Notably, the Policy includes no obligation of Mount Vernon to assert, or pay for, affirmative claims on behalf of VisionAid.

**B.   Suit against VisionAid in State Court**

In October, 2011, VisionAid terminated the employment of its Vice President of Operations, Gary Sullivan ("Sullivan"). In December, 2011, Sullivan brought suit against VisionAid in the Massachusetts Commission Against Discrimination ("MCAD"), alleging wrongful termination on the basis of age discrimination.  After receiving notification of the MCAD suit, Mount Vernon appointed counsel to represent VisionAid.  During the pendency of that action, appointed counsel filed pleadings which denied any discrimination against Sullivan and asserted three non-discriminatory reasons for his termination, one of which was that Sullivan had misappropriated corporate funds. VisionAid's alleged knowledge of the misappropriations emanated from a September, 2011 forensic accounting report it received which detailed a variety of dubious personal transactions made by Sullivan with corporate funds.

Mount Vernon explains that VisionAid accepted its defense in that matter for 18 months without objection.  It contends

that because VisionAid knew of the misappropriation before September, 2011, it could have elected to bring an affirmative action against Sullivan to recoup the allegedly misappropriated funds at any time after his termination but elected not to do so.  VisionAid responds that, under the original MCAD claim, there had been no need to allege the counterclaim for misappropriation.  In February, 2013, Sullivan dismissed his MCAD complaint and shortly thereafter filed suit in the Massachusetts Superior Court for Plymouth County.

At the outset of the second state suit, VisionAid requested that Mount Vernon prosecute a counterclaim for misappropriation of funds against Sullivan.  In July, 2013, Mount Vernon withdrew its reservation of rights and informed VisionAid that it would not fund VisionAid's counterclaim because 1) it was beyond its obligations under the Policy and 2) appointed counsel was fully capable of exercising independent judgment while defending VisionAid.  Moreover, Mount Vernon has repeatedly advised VisionAid that it is free to pursue its misappropriation counterclaim against Sullivan at its own expense.[2]

VisionAid continues to maintain that the counterclaim is a critical element of its defense against Sullivan and is therefore encompassed in Mount Vernon's duty to defend.

---

[2] Ultimately, VisionAid's answer in the state case was drafted by appointed counsel and its counterclaim was drafted by VisionAid's personal counsel.

VisionAid also asserts that its appointed counsel has a conflict of interest to the extent that VisionAid's counterclaim presents an obstacle to settling the age discrimination claim with Sullivan.

The parties' disagreement over 1) Mount Vernon's alleged obligation to prosecute VisionAid's counterclaim and 2) the purported conflict of interest of appointed counsel has prevented any settlement of the state case, which remains pending, and led Mount Vernon to file this suit.

### C. Procedural History

In August, 2013, Mount Vernon filed the subject complaint for a declaratory judgment to address whether it is required to prosecute VisionAid's counterclaim. In October, 2013, VisionAid filed a counterclaim for a declaratory judgment on the same issue but also claims that it is entitled to the appointment of independent counsel at Mount Vernon's expense.

In January, 2014, VisionAid filed a motion for certification of the pending legal issues to the Massachusetts Supreme Judicial Court ("SJC") for a declaratory judgment. That motion was denied by this Court in May, 2014.

The parties filed cross-motions for summary judgment on their respective claims for declaratory judgment in July, 2014. They agree that the instant dispute should be ultimately resolved at this stage.

## II. Cross-Motions for Summary Judgment

### A. Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)). The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." Id. A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to provide specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor.

O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.

**B. Analysis**

**1. Contentions of the Parties**

In its motion for summary judgment, Mount Vernon contends that VisionAid's request for it to prosecute an affirmative counterclaim for misappropriation against Sullivan goes beyond the plain language of the Policy, which only covers claims brought against VisionAid. Mount Vernon asserts that it is providing, and will continue to provide, a full defense of the age discrimination claim against VisionAid but that enlarging the insurer's duty to defend to encompass the prosecution of ancillary counterclaims is both contrary to the Policy language and unsupported by the case law.

Moreover, Mount Vernon asserts that VisionAid's misappropriation counterclaim would not defeat or offset any liability with respect to the wrongful termination suit against VisionAid and therefore ought not implicate its financial obligation. Finally, it avers that VisionAid is not entitled to independent counsel at Mount Vernon's expense because it is affording a full defense against Sullivan's claims without a

reservation or rights.  Mount Vernon notes that VisionAid is free to pursue its counterclaim against Sullivan with independent counsel and retains full authority to consent or object to any potential settlement agreement.

In their cross-motion for summary judgment, VisionAid asserts that 1) an insurer's duty to defend encompasses prosecuting its misappropriation counterclaim, 2) Mount Vernon's reading of the Policy's coverage is too narrow and 3) the counterclaim is compulsory, integral to the defense of the age discrimination claims made against it and critical to settlement negotiations.

VisionAid also contends that forcing it to retain and pay for its own counsel on the misappropriation counterclaim affords Mount Vernon an unjustified windfall and renders the case unmanageable from a practical standpoint.  Finally, despite the fact that Mount Vernon has withdrawn its reservation of rights, VisionAid asserts that the parties have conflicting interests with respect to the counterclaim that entitles it to independent counsel paid for by Mount Vernon.

The opposition briefs, to a large extent, restate the arguments made in the memoranda filed in support of the motions for summary judgment.

## 2. Insurer's Duty to Defend

Massachusetts law is settled as to the appropriate scope of coverage of an insurance policy:

> The question of the initial duty of a liability insurer to defend third-party actions against the insured is decided by matching the third-party complaint with the policy provisions: if the allegations of the complaint are "reasonably susceptible" of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense.

Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 394 (2003) (citation omitted). Thus, to warrant coverage by an insurer under Massachusetts law, the complaint need only show a possibility that the claims asserted against an insured are covered by the policy. Id. In contrast, when the complaint includes allegations that

> lie expressly outside the policy coverage and its purpose, the insurer is relieved of the duty to investigate or defend the claimant.

Id. When there are ambiguities and two "rational interpretations" of a policy's language exist, "the insured is entitled to the benefit of the one most favorable to it." Colonial Gas. Co. v. Aetna Cas. & Sur. Co., 823 F. Supp. 975, 982 (D. Mass. 1993).

That is not, however, the end of the analysis because "liability insurers have a broad duty to defend their policy holders." GMAC Mortg., LLC v. First Am. Title Ins. Co., 464

Mass. 733, 738. To further the insurer's broad duty to defend, Massachusetts law has adopted what is referred to as the "in for one, in for all" or the "complete defense" rule. Id.  The rule acknowledges that there may well be situations where a complaint brought against an insured contains both covered and non-covered claimed according to the plain language of the policy. Id. at 739.  Accordingly, because it would be impractical for insurer-appointed counsel to divide representation between covered and non-covered claims, the "in for one, in for all" rule expands the insurer's obligation to defend all claims brought against the insured so long as at least one claim asserted against the insured is covered by the policy. Id. at 738-39 ("Said differently, if an insurer has a duty to defend one count of a complaint, it must defend them all.") (citation and internal quotations omitted).

Here, according to the Policy, a covered "Claim" is any proceeding "initiated against" VisionAid in which someone seeks to hold it liable for a purported wrongful act.  Neither party disputes that the state court case brought by Sullivan encompasses claims made against VisionAid that are covered by the Policy.  Thus, Mount Vernon is undoubtedly "in for one, in for all" in its defense of the Sullivan suit.  Nevertheless, that preliminary finding does not resolve this case because the

parties sharply disagree as to Mount Vernon's required "defense" of the Sullivan suit.

Citing the SJC's recent GMAC decision, VisionAid argues that the insurer's duty to defend and the "in for one, in for all" rule lead to the conclusion that Mount Vernon must fund its misappropriation counterclaim. The Court disagrees. In GMAC, the SJC was faced with a question of the scope of a title insurer's obligation to defend a counterclaim raised by a homeowner after the title insurer initiated suit on behalf of the insured to reform a deed. The court held that 1) the "in for one, in for all" rule that applies to general liability insurers is inapplicable in the "unique title insurance context" and 2) the title insurer had no obligation to defend the insured against counterclaims. Id. at 739, 741-42. The court further noted that it "might" be inclined to conclude differently if claims asserted in response to litigation initiated by a title insurer were compulsory counterclaims. Id. at 743.

Simply put, the GMAC opinion does not enhance VisionAid's case. In fact, VisionAid admits that the GMAC decision "did not specifically address the duty of a liability insurer to prosecute an insured's counterclaim." Instead, it dealt with the "unique" world of title insurance and held that title insurers are not required to cover counterclaims raised against the insured. Not only is Mount Vernon a general liability

provider but the issue here is whether an insurer's duty to defend includes an obligation to prosecute counterclaims asserted by the insured rather than such claims against it in suits initiated by the insured.

Moreover, the majority of both federal and state cases to consider this issue have found that an insurer's duty to defend does not include an obligation to prosecute counterclaims for affirmative relief. See, e.g., Bennett v. St. Paul Fire & Marine Ins. Co., 2006 WL 1313059, at *4 (D. Me. May 12, 2006) (collecting cases); Reynolds v. Hartford Acc. & Indem. Co., 278 F. Supp. 331, 333 (S.D.N.Y. 1967) (noting that it would be "manifestly unfair" to require insurer to pursue affirmative counterclaims in light of the fact that the insurance contract did not provide for coverage of such claims); James 3 Corp. v. Truck Ins. Exchange, 91 Cal. App. 4th 1093, 1104 (2001) (ruling that insurer was not required to take affirmative action to recover money, including filing counterclaims, even though subject matter of affirmative defenses and counterclaims were related). See also Allan D. Windt, Insurance Claims and Disputes, § 4:41 (5th ed.) ("An insurer, being obligated only to defend claims brought 'against' the insured, is not required to bear the cost of prosecuting a counterclaim on behalf of the insured").

The Court agrees that an insurer ought not to bear any obligation to prosecute affirmative counterclaims asserted by the insured. Such a holding finds support in the language of the Policy, which only provides coverage for claims first made against VisionAid. Forcing Mount Vernon to fund VisionAid's affirmative counterclaims seeking monetary damages for the alleged misappropriation by Sullivan would fundamentally rewrite the Policy. The Court declines to do so. See Shoshone First Bank v. Pac. Emp'rs Ins. Co., 2 P.3d 510, 516 (Wyo. 2000) (holding that the court would not "torture" the policy language to provide for coverage of insured's counterclaim).

Furthermore, excluding the obligation to pursue an insured's counterclaims from an insurer's duty to defend does not run afoul of the "in for one, in for all" rule prevalent in Massachusetts. That rule only imposes a broad requirement to defend any and all claims asserted against an insured, not just those covered by the policy. GMAC, 464 Mass. at 738-39. It is simply not implicated when the insured seeks affirmative relief.

VisionAid argues, nevertheless, that the counterclaim would aid its defense and that an insurer must pursue a counterclaim when it could defeat or otherwise offset liability. Moreover, it contends that the Court should follow the few courts that have found that an insurer's obligation to defend an insured extends to counterclaims that are "inextricably intertwined with

the defense" and necessary to the defense as a strategic matter. See Safeguard Scientifics, Inc. v. Liberty Mut. Ins. Co., 766 F. Supp. 324, 334 (E.D. Pa. 1991), rev'd in part on other grounds, 961 F.2d 209 (3d Cir. 1992). This argument fails to convince the Court.

First, VisionAid's misappropriation counterclaim against Sullivan is not necessary to defeat his age discrimination claim. That is because appointed counsel for VisionAid need only present evidence of a "legitimate, nondiscriminatory reason for terminating" Sullivan. See Blare v. Husky Injection Molding Sys. Boston, Inc., 419 Mass. 437, 446 (1995). That could be accomplished most directly by showing that VisionAid was on notice of the alleged misappropriation as a result of the September, 2011 forensic accounting report that detailed the personal transactions made by Sullivan with the use of corporate funds. Appointed counsel need not establish each of the elements of a misappropriation claim to negate Sullivan's discrimination claim.

Alternatively, a jury could find that, despite Sullivan's misappropriation, he was impermissibly terminated for discriminatory reasons. That leads to the second, more important point, i.e., that the misappropriation counterclaim does not automatically offset VisionAid's potential liability. Were VisionAid to prevail on its counterclaim and recoup

misappropriated funds from Sullivan, Mount Vernon would not be entitled to such funds to offset its liability if Sullivan simultaneously prevails on his age discrimination claim. Cf. Great West Cas. Co. v. Marathon Oil Co., 315 F. Supp. 2d 879, 882 (N.D. Ill. 2003) (holding that duty to defend requires insurer to cover claims and actions seeking third-party contribution as a "means to avoid liability").

Thus, it can hardly be said that the affirmative relief sought in VisionAid's counterclaim is "inextricably intertwined" with a complete defense to claims asserted against it. See Bennett, 2006 WL 1313059, at *5 (rejecting argument that counterclaim was "inextricably intertwined" and refusing to hold insurer responsible for covering counterclaim because it "primarily [sought] affirmative relief based on allegations ... only tangentially related" to the complaint raised against the insured). To the extent VisionAid seeks affirmative relief above and beyond a defense of the claims made against it, VisionAid must shoulder the cost of doing so.

### 3. Insured's Right to Independent Counsel

VisionAid also posits that it is entitled to appoint independent counsel at Mount Vernon's expense because of an alleged conflict of interest. It contends that Mount Vernon, as well as appointed counsel, has an interest in

> devaluing or impairing the counterclaim to the point that would remove it as an obstacle to settling with Sullivan.

Moreover, VisionAid argues that forcing it to retain separate counsel to prosecute its counterclaim would make the litigation unmanageable and be an incentive to appointed counsel to "offload" defense responsibility in an effort to save costs.

The Court perceives no conflict of interest. Contrary to VisionAid's counter-intuitive assertion, Mount Vernon and appointed counsel do not have an interest in devaluing the counterclaim. The strength of VisionAid's counterclaim both weakens the wrongful termination case against VisionAid and increases appointed counsel's bargaining power in settlement negotiations. Devaluing the counterclaim would undermine Mount Vernon's own interest in limiting Sullivan's recovery for wrongful termination.

Furthermore, unlike the prospect of limiting the defense of an insured to particular claims, there is nothing inherently impractical or unwieldy about VisionAid relying on its own separate counsel to assert the counterclaim. In its answer to the state court complaint, appointed counsel drafted the answer and VisionAid's own counsel drafted the counterclaim. That indicates an ability of separate attorneys to collaborate and yet accomplish their distinct objectives. The Court declines to

acknowledge VisionAid's parade of horribles with respect to divided representation.

Absent a conflict of interest, in order to entitle an insured to independent counsel at the insurer's expense, an insured must demonstrate that the insurer is defending it under a reservation of rights. Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 406-07 (2003). VisionAid admits, however, that Mount Vernon has already withdrawn its reservation. Accordingly, Mount Vernon has no obligation to relinquish its defense of VisionAid or to permit VisionAid to utilize independent counsel at its expense.

## ORDER

For the foregoing reasons,

1) the motion of defendant VisionAid, Inc. for attorney's fees (Docket No. 48) is **DENIED;**

2) the motion of defendant VisionAid, Inc. for summary judgment (Docket No. 49) is **DENIED;** and

3) the motion of plaintiff Mount Vernon Fire Insurance Company for summary judgment (Docket No. 53) is **ALLOWED.**

**So ordered.**

         /s/ Nathaniel M. Gorton
         Nathaniel M. Gorton
         United States District Judge

Dated March 10, 2015